ANDERSON, J.,
delivered the opinion of the court.
The first question which meets us in this case, is as to the jurisdiction of this court to review the judgment or sentence of the Circuit court complained of. The power to fine and imprison for contempt is incident to every court of record. ‘ The courts ex necessitate rei, have the power of protecting the administration of justice, with a promptitude calculated to meet the exigency of the particular case. Clement’s case, 11 Price R. 68. Even peers, and persons having privilege of Parliament, enjoy no exemption in this respect. 1 Burr. R. 631, Rex v. Earl Ferrers. And where it is not otherwise provided by statute, “the sole adjudication of contempt, and the punishment thereof, belongs exclusively, and without interference, to each respective *court, ” is the language of Mr. Justice Blackstone, approved by Judge Story in ex parte Kearney, 7. Wheat. R. 38, 44. A commitment for contempt is a commitment in execution, and the judgment of conviction, unless the power to supervise is given by statute, is not subject to review in any other court; not even upon a writ of habeas corpus. Hurd on Habeas Corpus, p. 412, citing numerous cases.
The fourth section of the act of Assembly, approved January 14th, 1871, Sess. Acts of 1870-1, p. 31, chap. 34, which is copied from the Code, omitting the words “against a free person, ’ ’ and adapting it to the present organization of the courts, Code, chap. 209, sec. 4, p. 840, gives the writ of error in cases for contempt, with certain exceptions. It is in these words: “To a judgment for a contempt of court, other than for the nonperformance of or disobedience to a judgment, decree or order,' a writ of error shall lie, when the judgment is of a County court, from the Circuit court having jurisdiction over such county; when it is of a Circuit, or a Corporation, or a Hustings court, from the court of Appeals.” Is the judgment for contempt in this case “for the non-performance of, or disobedience to, a judgment, decree or order, ’ ’ in the sense in which those terms are used in this section? To all other judgments for contempt a writ of error will lie.
Chapter 194, section 24, of the Code of 1860, p. 801, describes the cases in which contempts may be punished summarily. If this case is so punishable, it must fall within the fourth class of cases therein described ; to wit: 1 ‘disobedience or resistance of an officer of the court, juror, witness or other person, to any lawful process, judgment, decree or order of the said court. ’ ’ This language is much more comprehensive than the language in the act before recited. The language there, it seems to me, embraces only such judgments for contempt as are designed to enforce performance, or obedience, and not *to punish for an offence; such process as courts of equity employ to enforce their decrees, &c. It embraces only such cases as were excluded from the operation of the writ of error, by the 9th section of chap. 24 of the Acts of Assembly of 1847-8, by the words “any proceeding by attachment to compel the performance of any decree or judgment, or to enforce obedience thereto.” Acts of Assembly of 1847-8, p. 160. To all other judg *895 ments for contempt a writ of error will lie. And the judgment for contempt complained of in this case, not being to compel the performance of, or obedience to a decree, &c., but to punish for an offence, the writ of error will lie.
This case is then properly before us. And what is it? It is a judgment of the Circuit court of Bedford county, for a fine of fifty dollars, against the plaintiff here, for a contempt in counselling, advising, aiding and abetting one Thorpe H. Nance, a party to a suit depending in said Circuit court, (whose jurisdiction he had not objected to, but virtually acknowledged), in his attempts afterwards to prevent the execution of its lawful decrees and orders, and to defraud the said court of its lawful jurisdiction of the subject of said suit; thereby obstructing the administration of justice, and contriving to destroy the authority of one of the superior courts of this Commonwealth, and to bring it into contempt: all of which he sought to accomplish by invoking the interference of the District court of the United States, by its high prerogative writ of injunction to inhibit and injoin the officers and commissioners of the said Circuit court, and the parties to said suit, their agents and attorneys, and all other persons, from obeying, executing and performing the said lawful decrees of said court pronounced in the exercise of its lawful jurisdiction ; the said District court, sitting as a court in bankruptcy, having no jurisdiction to supervise the judgments, orders or decrees of the said Circuit court, or to sit in judgment thereon, *to revise or affirm; and, in fact, having at that time no jurisdiction of the subject matter of the suit, or over the parties plaintiff therein.
This is substantially the ground upon which the honorable judge of the Circuit court instituted his proceedings against the said Nance, and the plaintiff here; and upon this ground, if sustained by the record, all must admit, it was an aggravated case of contempt, and justly obnoxious to the prompt and vigorous exercise of all the powers with which the judge of the said Circuit court was invested, to protect the authority of his court, to maintain its jurisdiction, and to enforce its decrees; and to visit with just punishment, the perpetrators of such an offence, against public justice. I say such must be the conclusion if the premises be admitted.
But they are not admitted by the plaintiff in error. He alleges that as a licensed attorney he was employed by the said Nance, to act as his counsel in a cause which he had pending in the said District court, in bankruptcy; and from the facts stated to him by the said Nance, he believed that the said District court had rightfully' jurisdiction of the said subject, and could lawfully give the relief to his said client which he desired; and that with this belief, which he honestly entertained, he did advise his client, to apply to the judge of the said i District court for the injunction aforesaid, | | ! which was granted by the said judge, upon the petition which he prepared (which is copied into his answer,) for the said Nance, and which was sworn to by the said Nance; all of which, he says, was done by him as counsel for said Nance, and in the discharge of his professional duty, and in good faith, without any design, wish or expectation of committing any contempt, or of offering any disrespect, to the said Circuit court of Bedford county; but solely that the said Nance might avail himself of what this respondent believed to be his legal rights, by the use of the usual and ordinary *methods of legal procedure, in a court of competent jurisdiction. This is sworn to.
It will be observed that the plaintiff in error, in his answer to the rule, takes issue upon the allegation of jurisdiction. That is a question of great delicacy and importance ; and as from the view we have taken of this case, its decision is not necessarily involved, we should deem it a work of supererogation to decide it in this case ; and, therefore, would not be understood as indicating any opinion thereon. If another ground of his defence is tenable, it is not material whether his belief, that the said District court had jurisdiction of the case, is right or wrong, true or false.
It is the duty of an attorney to be true to his client. Bvery attorney, before he is authorized to practice in any of the courts of this Commonwealth, must take an oath that he will honestly demean himself in the practice of the law, and to the best of his ability execute his office of attorney at law; and when he is licensed in this State, the oath of fidelity to the Commonwealth. It would hardly be contended, that, in executing the office of attorney at law, he could be required to violate the first branch of his oath of qualification, to demean himself honestly. It will not be contended that he could be required to do an immoral act, or an illegal act, or any wrong, in order to subserve the interests of his clients. When Lord Brougham says, in his masterly and eloquent defence of Queen Caroline, “separating the duty of a patriot from that of an advocate, he must go on reckless of consequences, though it should be his unhappy fate to involve his country in confusion,” he speaks the language rather of the impassioned orator, than the cautious and well considered language of a judge. The duty of an attorney to his client cannot conflict with his obligation to demean himself honestly in the practice of law, or to be faithful to his country. If it did, he could not practice law in Virginia, because he *could not take the oaths, if licensed here, required of him. And I will be allowed to say in passing, I do not know why the Legislature inserted that proviso, 1 ‘if licensed here, ’ ’ in the oath required, of fidelity to the Commonwealth. It seems to me that any lawyer, who resides in Virginia, whether licensed here or not, should be required to take the oath of fidelity to the Commonwealth. But it is un *896 questionably the duty of an attorney to endeavor, to the best of his ability, by his advice and counsel, and by his conduct, to secure to his client every legal right and remedy to which he may think him even probably entitled; and if he fails to do it he is faithless to his trust, and should be held morally and legally responsible. And if he acts in good faith, if he demeans himself honestly, he is not responsible for an error in judgment. But it is of the utmost importance to the proper administration of justice, that he should be free and unembarrassed in the discharge of his professional duty. But when a man becomes an attorney at law, he does not cease to be a citizen; and when he assumes the relation of attorney to a client, he is not absolved from his obligations as a man and a citizen. And it is the high moral principle and conservative sentiment which have ever actuated that honorable and useful profession in Virginia, that has enabled it to perform so important a part, and deservedly, in moulding and giving tone to public sentiment, and in advancing the great interests of society. We hold that, as it is the duty of the client, so is it the duty of the attorney, and in a higher sense considering his relation to the courts, and in general his greater intelligence and capacity to appreciate its importance, to respect the authority and to maintain the lawful jurisdiction of the courts of justice. 1 ‘For laws, without a competent authority to secure their administration from disobedience and contempt, would be vain and nugatory. ’ ’
*An attorney, then, who would corruptly conspire with his client to obstruct the due administration of the law, and to bring the authority of a court of justice into contempt, by resisting and obstructing the execution of its lawful decrees, by whatever contrivance, even though it should be by procuring the interference of another court, which had no appellate or supervisory power, or jurisdiction of the subject matter of the suit, in abuse of its powers, to injoin and inhibit the-officers of said court and other persons from the execution or performance of said decrees, he is at least as guilty of an offence against public justice, and of a contempt of court, as his client, and as justly liable to summary punishment.
But where, as I have said, the attorney has acted in good faith, although he may have erred in judgment, he is not liable. ■To vindicate his conduct, it is not necessary to be shown that he was right in his opinions. But it is necessary to be shown that he was acting in good faith, for what he believed to be the interest of his client, and not from disrespect to the court, or from a design to oust it of its lawful jurisdiction. And this, we think, is shown, by the affidavit of the plaintiff in error, in answer to the rule.
We think his affidavit clears him of the contempt: and that must be taken as true. “If the party can clear himself upon oath, jhe is discharged; but if perjured, maybe prosecuted for the perjury. ” 4 Black. Com. 287. Again on page 288, the great commentator says, “In the courts of law, the admission of the party to purge himself by oath, is more favorable to his liberty, though perhaps not less dangerous to his conscience ; for if he clears himself by his answers the complaint is totally dismissed. ’ ’ And this exposition of the law on this subject is adopted by Stephens in his learned and valuable commentary; and we find no authority to the contrary. *We are of opinion, therefore, that the judgment of the Circuit court of Bedford, imposing a fine of $50 upon the said Henry H. Wells, must be reversed.
Judgment reversed.